May it please the Court, my name is Donald Childress and I represent Mark Allen who is the pro se plaintiff below. Mr. Allen is in the courtroom today seated in the first row with his wife. Your Honors, my client alleges that his civil rights were violated when Gold Country Casino terminated his employment on account of his race and in retaliation for his seeking the guardianship of three tribal children in the quote-unquote white man's court. The court below, adopting the findings and recommendations of the magistrate judge, summarily dismissed this case, finding first that the tribe, and by implication the tribe's casino, were immune from suit based on the doctrine of tribal sovereign immunity, and second, that Allen had failed to allege a federal cause of action against Mrs. Maddie Mayhew. We'd like to address two points. The first point is that the court below clearly erred in summarily dismissing all of the individual claims against the individuals in this case. Can we really tell what those claims are? There's, I know there's a general Doe allegation, but I don't know that there's anything in there that says what any Doe did. You're right, Your Honor. It's unclear based on the complaint who exactly the Does are. However, if you look in the excerpts of record 52 through 54, Allen says affirmatively that he was trying to comply with the plain statement rules of Federal Rules of Civil Procedure, and that at a scheduling conference he would seek to name some of these individuals and begin to make his case for the conspiracy. It seems that at one level it would be an onerous requirement indeed to have Mr. Allen try to sort out the various hierarchy within the casino and also within the tribe to determine precisely who all was engaged in the conspiracy to violate his civil rights. Our second point is that the tribal casino and the tribe are not coterminous. They're not of the same necessary entity. While it is clear under Federal common law that absent congressional abrogation or tribal waiver, a tribe is immune from suit, it is a different question whether or not a tribal business entity or other economic subunit of a tribe is clearly entitled to raise the tribe's immunity. The cases say a housing authority is. Yes, Your Honor. How is this different? To begin with in that case, it appeared on the record that there at least was some affirmative showing by the other side as to the exact contours and relationship of the housing authority to the tribe. Here we would say that the apologies in effect got a pass. If you look at the record, it is unclear what exactly the organization or the structure or the relationship of the tribal casino is to the tribe. All that is ever said is that it is a tribal casino, or rather, it is the tribe doing business as a tribal casino. It's possible it's a separate incorporated entity. It's possible that it's incorporated either under the laws of the State of California or under separate provisions. It's also possible that it's a separate management company. None of these facts were ever put forward on the record below. And what we would allege is that in a case such as where there's a housing authority, the Court had that information in front of them. And the allegations are, I think, that it's owned and operated by the tribe. That's all we know, Your Honor. But again, that doesn't necessarily tell the Court, or in particular the Court below, much of the precise relationship. In the case of Gavil v. Little Six, the Court had before it certain information. For instance, what was the preamble, the reason for putting together the tribal economic subentity? What was the precise relation? Were the tribal elders the same people who owned and operated the tribe? Where did the money go? All these are questions that remain on this record. And given that it is unclear, we feel that a remand is appropriate for further proceedings. On this very point, again, it was not Mr. Allen's obligation under the Federal rules to put forward these facts. Rather, besides the fact that he was proceeding pro se, it was the obligation of Appalese. While there's no case precisely on point claiming that a tribal economic subunity has to put forward all this information, we would say, first of all, by looking at the other cases, such as the Pink and Modoc and Hagan v. Sisseton, you can see there on the record that the Court is able to make some particular findings of fact. So it obviously had certain factual predicates in front of it. Can a tribe operate a casino without an intergovernmental agreement? With the State, Your Honor? I believe it's required that there is a contract between the State and the tribe. First of all, there's the Indian Gaming Regulatory Act. Yes, Your Honor. Which permits these. So it's a creature of Federal statute, can exist. Absent that statute, the casino couldn't exist, right? I believe you're correct. And it couldn't exist without a State tribal compact? I believe you're correct, Your Honor. Do you have any cases where an entity created as the result of congressional statute and operating because of and only because of an agreement of this type was declared to be not sovereignly immune? No, Your Honor, we do not. But we also would recognize that there are no cases which specifically, except for Gabel and perhaps the Johnson v. Harris case out of the District of Kansas that analyzed the exact or similar factual predicates to what we have here. And in those cases, the appellees or the defendants in those cases had to come forward with affirmative facts that required them to show certain things. What was the connection? What was the ownership relationship? Where did the monies go? None of that was required here. Again, while there aren't cases on point specifically making that the burden of appellees, it is clear that in general cases of sovereign immunity, and in particular in the sort of similar instances where someone claims foreign sovereign immunity under the Foreign Sovereign Immunities Act, that they are required to affirmatively show that they are entitled to assert the sovereign immunity. Is this a Rule 12 dismissal? This was a Rule 12b-1, I believe, with respect to the tribe and its casino. As best I can make plain, it also seems like a 12b-6 as against the individual. So we assume the facts of the complaint to be true? And in the light most favorable to Mr. Allen, yes, sir. Okay. Including his allegation that this is owned and operated by the tribe. Well, again, agreed. It says owned and operated by the tribe or doing business as in the complaint. But it is perfectly unclear based on that language what exactly the relationship is. And again, based on this Court's case law, in Reyes State of Ferdinand Marcos, it is clear that when a foreign sovereign, or even in this case a dependent sovereign, seeks to put forward sovereign immunity, they bear the burden of affirmatively establishing that either the tribe or in this case the tribal economic subunit is clearly entitled to assert that immunity. They didn't meet that burden here. They effectively got a pass from the magistrate judge and got a pass from the court below, who summarily dismissed this case. We don't want to make sort of too much out of this. But, you know, to the extent even that you look back at the record and it says, when the district court dismissed this case, that Mr. Allen was a pro se prisoner. I mean, you know, it sort of raises questions of whether or not this was given the full consideration that was required. And even if you look back further as to the magistrate judge's findings, he effectively adopts the analysis of Appellee's. He adopts that analysis because in the Appellee's motions to dismiss and other filings, they make claim that the only individual charge is against Mrs. Maddie Mayhew. But it's- Can we have a question? No, I was just going to say, with regard to the casino itself, the problem, and it was already partly addressed by Judge Hawkins, is that you've got the Gaming Act, which I believe specifies that the purpose of authorizing Indian gaming is governmental, basically. It's to develop the tribe's economy and so on. And then you have a compact that recites the same purpose, a government-to-government compact, which enables the gaming and recites the same purpose. And all those things are either of record or judicially noticeable. And that gets very close, I think, to saying that this gaming must be for a governmental purpose or it couldn't exist. It is very close, Your Honor. I'd like just to take recognition of the time. I'd like to reserve two minutes for rebuttal, but I would like to answer your question right now, Your Honor, if that's possible. Sure. I think that we have to look at this in the context of- Precisely. Yes, sir. There's a three-part test. The third part of that is whether or not there's a certain federal interest involved here. Clearly, there's a federal interest under the Supreme Court's case of Cabazon, in this case. The other two factors that need to be looked at are, first, what are the purposes of organization of the casino? Here, we don't know if they're entirely commercial or governmental, regardless of what the federal interest is. And second, how close in relationship are the tribe and the tribal organization? I reserve the remainder of my time, unless there are further questions. I don't see any. Thank you. Counsel? Good morning. May it please the court. My name is Blaine Green. I represent the Berry Creek Rancheria. At the time, my due tribe was Berry Creek Rancheria, the Gold Country Casino, and Maddie Mayhew. I want to focus on the issue of Plaintiff's primary argument is that there is not, that there should be a distinction between the tribe and the casino, and that the district court didn't do the proper contextual factual analysis. But as this Court is clear from the Court's questions, it's properly focused on what the allegations of the complaint were, which was that the casino is a DBA of the tribe. The tribe is doing business as the Gold Country Casino. Can you give us an example of a tribal enterprise that would not be entitled to sovereign immunity? Just a hypothetical example. Sure. If the tribe sets up, for example, a business, an insurance business, for example, in which they were to sell, set up a company that was going to sell some products off the reservation. And the entire purpose of the company was to do business off the reservation. And it was not, unlike the Indian Gaming Regulatory Act, it was not a business that was specifically authorized by federal law to further tribal sovereignty and independence. That that would be a situation, potentially, where if the tribe were not actually responsible for a liability of that separate company, then that potentially would be a situation where doing the kind of factual contextual analysis that is contemplated in Gavley might make some difference. I guess I was looking for you to give a hypothetical example of a business enterprise that a tribe was involved in, which ipso facto, if you will, would not be entitled to sovereign immunity. The flip side of what I understand occurred here. That is, Judge Carlton looked at the gaming enterprise and said, sovereign immunity, no need to examine the facts. Can you give us an example of an enterprise that would be the exact opposite of that? Where simply by its nature, there would be no need to examine the facts to determine whether it was entitled to sovereign immunity? I don't think Or is the answer, there is no such enterprise? I don't believe that there is such an enterprise where just by its nature, the tribe would not be entitled to sovereign immunity. I believe that it would depend on whether the, you would have to look at whether the tribe was going to be responsible for the award. If it's not the type of business that is specifically contemplated by federal law to enhance tribal sovereign immunity. Judge Camby and I, both from Arizona, we're near neighbors of San Diego. I read yesterday's Arizona Republic, that's our major statewide newspaper, and it had a article about business development along the corridor between Scottsdale and Phoenix and the Salt River Indian Reservation. And they report that the Salt River tribe is building a 1.5 million square foot office retail park at one location called Riverwalk. At another location, an office center that has 3 million square feet, including a cold stone creamery. And that the Fort McDowell tribe, which is north of Scottsdale, is operating a Radisson resort. Would any of those enterprises be categorically not entitled to sovereign immunity or would some examination be required? I don't think that they would be categorically, that sovereign immunity would be categorically unavailable. I do think that they would be very different from gaming because these are the types of enterprises that are engaged in by many different companies and private actors, not just Indian tribes. Why isn't sauce for the goose, sauce for the gander? Well, I- You know what I mean. I know what you're saying. I think that the key is that- If you tell us that on the opposite end, that we, that factual examination is required, why isn't it on this end? The key is that the Indian Gaming Regulatory Act authorizes gaming with respect to Indian tribes as a part and the purpose of which is to enhance tribal sovereignty. And in this case, particularly, you don't wind up getting to the question of whether you have to do a contextual or factual analysis. You don't get to the per se rule issue because in this case, the plaintiff has pled that the tribe and the casino are the same, that the tribe owns and operates the casino. So in this case, I don't think this is the case to decide whether you make the per se rule or not, and that's not what the district court did in this case, properly so. However, certainly, looking at the cases and what has happened to the Gavley test and seeing how the Gavley test has been applied in the context of other claims against tribal casinos, I would suggest to the Court that a per se rule could be recognized with respect to tribal casinos, because looking at the Gavley test, for instance, it does look at the Gavley test and applies the Gavley test and holds that, yes, in fact, under Gavley, because Indian gaming under the Indian Gaming Regulatory Act is designed to enhance the sovereignty of the tribe, tribal casinos are immune from suit. The immunity applies not just to the tribe, but to the tribe's casinos. If the tribe hired Harris to run the casino, would Harris be immune? In fact, we have seen that case and we know the answer to that case, and that's one of the cases that the appellant relies on, is the Harris case, Johnson v. Harris Kansas Casino, I believe it is. And in that case, because the management, it was the management company, actually, that wound up getting sued, and the management company was held not to have the immunity of the tribe. And that makes sense, because it's the management company. It's not the tribe. There really is a fundamental distinction between the tribe and its tribal casino on the one hand, versus the tribe and a management company that is the manager of the tribal casino on the other hand. Did you spend a few minutes on Mayhew? Sure. With respect to Mayhew, the allegations of the complaint, the clear allegation is a filing false accusations allegation against Ms. Mayhew. There are also allegations of conspiracy elsewhere in the complaint, but it's not clear that these allegations apply directly to Ms. Mayhew or to whom the conspiracy would involve if Ms. Mayhew were a part of it and some others were a part. How sympathetically do we have to deal with this complaint? There is an allegation in 1985 conspiracy, Section 1985 conspiracy, in which the plaintiff is being held guilty of a conspiracy, and there are some dual defendants alleged, and that isn't spelled out. Is the plaintiff, who was then pro se, entitled to have an explanation or perhaps now being represented in another shot at amendment to spell that out? Well, the allegations with regard to conspiracy, there actually are some more facts from reading the complaint and some of the arguments in the appellate briefs where the argument is that Ms. Mayhew may have conspired with other, another member of, basically, with the tribe or the casino. And the allegation is that there was this guardianship proceeding and that Mr. Allen was not treated fairly in the guardianship proceeding, which involved the tribe, and that Ms. Mayhew may have somehow worked with the tribe to make life more difficult for her. Are we individuals in it? So, in other words, there are not other individuals pled in the complaint. And with respect to the conspiracy, if you had to have Ms. Mayhew and the casino or Ms. Mayhew and the tribe, obviously, those defendants are subject to sovereign either the tribe or the casino in it. They would be necessary if you were to state that. No, but I was thinking of the Doles, who are alleged to be individual defendants. I don't know anything about them, of course, because it's not spelled out. But my question really is whether they're entitled to a shot at spelling them out. The the certainly the record wasn't the the plaintiff had two opportunities to to draft the complaint down below. And certainly the standards with respect to with respect to pro se litigants, the court takes a more liberal view of the pleading. However, even taking that liberal view of the pleading, there isn't anything that the that the tribe could have responded to with respect to the allegations as to the Dole defendants. Anything further? We gave your opponent a little bit of extra time. Is there anything else you'd like to bring to our attention? I briefly mentioned the issue of rule of necessary and indispensable parties, Rule 19b analysis. It's in your brief, isn't it? It is in the brief. I don't think it's necessary to get to, but that would be an additional basis for not keeping the tribe in. Even if the casino were to stay in, the tribe is a necessary party, so you couldn't have a claim go forward against the casino, even if it were a separate entity. Okay. Thank you. Thank you, counsel. Rebuttal? You should put two minutes on the clock. Thank you, Your Honor. I'd like to make two points. The first point is that there was no analysis undertaken whatsoever of any of the individual does in this complaint. If you look at the excerpts of record, pages 52 and 53, in Allen's opposition to defendants' motion to dismiss, he effectively gives a cry for help. He says to the court, Your Honor, this case is unique, and I pray the indulgence of the court to let me go forward, and based on further in a scheduling conference and other colloquies with the court, to be able to precisely define who the does and other individuals are in this case and to make up my complaint. While it is clear on the face of the complaint that he does not mention the magic words 42 U.S.C. section 1985-3, he does on the first page of the complaint reference conspiracy, and after that the words 14th Amendment, and likewise in his opposition to the motion to dismiss. He says my only complaint is not against Mrs. Maddie Mayhew, but rather goes to the individual defendants as well as part of a conspiracy to violate my civil rights, and he cites. There was no answer filed in this case, was there? I'm sorry, Your Honor? There was no answer filed in this case, was there? I don't believe so, Your Honor. So if the case goes back, you can file an amended complaint. Exactly, Your Honor. And that's what we would ask, at least as to the individuals, that this case go back for remand for further proceedings to allow Mr. Allen to name the individuals who firmly allege his 42 U.S.C. section 1985 claim and to go forward there. The second point, and as I think is obvious from the fact that Mr. Green struggled a great deal, is that he wants a per se rule in this case. And Your Honor asked great questions as to when or in what circumstances that per se rule would fall away. And that's exactly what we're asking the Court in this case to do, which is to remand for further proceedings, first and foremost, to determine the exact relationship between the tribe and the tribal casino. That is the appellee's obligation. They've got to pass on that in the court below. And this Court should remand for further proceedings there as well. Unless the Court has any further questions. What rights were alleged to have been interfered with? I think the best way of looking at it is that when Mr. Allen sought to take recourse in the state courts of California, there was a conspiracy to prevent him from doing that. And that is his termination from Gold Country Casino effectively stopped his financial abilities to continue with the guardianship proceedings. So it's interfering with the access to the state court. Exactly. And as the Supreme Court held in Tennessee v. Lane, it's a fundamental right for American citizens to have access to state courts. This is exactly the case that the civil rights statutes in 1985-3 were designed to prevent. And that's why the Court of Appeals should be reversed. Excuse me. The Court below should be reversed. Okay. Thank both counsel for their argument. Very helpful arguments. And thanks to the Jones Day Firm for taking this case on. We appreciate that. The case just argued will be submitted for decision. The next case on the agenda.
judges: Canby, Thompson, Hawkins